**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KEVIN LYNCH,
                              Plaintiff,

-against-                           Case No.

PLAYWRIGHTS HORIZONS, INC.,
                             Defendant.

**CLASS ACTION COMPLAINT**
**JURY TRIAL DEMANDED**

1. Charging people different prices based on race is illegal. Race-based pricing violates federal law, like the 1866 Civil Rights Act's ban on racial discrimination in contracting. And it violates state and city law, especially when the discriminator is a place of public accommodation.

2. Though that legal principle is obvious, a famous theater in New York City insists on flouting it. Playwrights Horizons, a renowned Off-Broadway theater whose plays have won 7 Pulitzer Prizes, just finished its run of the play *Practice*. For the showing on November 6, 2025, Playwrights hosted a "BIPOC night," where tickets were massively discounted for patrons who identified as black, indigenous, or people of color. For everyone else—essentially, whites—tickets were full price.

3. Plaintiff, Kevin Lynch, attended *Practice* on November 6. But because he is white, he paid full price. Many other patrons also paid full price for *Practice*. All are harmed by Playwrights' discriminatory pricing, and all are entitled to recover.

4. Racial discrimination is not avant garde; it is "invidious in all contexts." *SFFA v. Harvard*, 600 U.S. 181, 214 (2023). Playwrights is liable and should be ordered to provide all appropriate relief.

1

## PARTIES

5. Defendant, Playwrights Horizons, Inc., is a New York-based nonprofit. It runs two Off-Broadway theaters. It hosted *Practice* at the Judith O. Rubin Theater. Playwrights sold the tickets to *Practice* and charged the discriminatory prices challenged here.

6. Plaintiff, Kevin Lynch, is a patron of the theater. He attended *Practice* on BIPOC night in 2025. But because he is white, he bought his ticket at full price. He sues on behalf of himself and all others similarly situated.

## JURISDICTION AND VENUE

7. This Court has federal-question jurisdiction under 28 U.S.C. §1331 because this case "aris[es] under" 42 U.S.C. §1981, a federal statute. This Court has supplemental jurisdiction over the state- and local-law claims under 28 U.S.C. §1367 because "[t]he state and federal claims . . . derive from a common nucleus of operative fact.": Playwrights' racial discrimination in ticket pricing. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725 (1966).

8. Venue is proper under 28 U.S.C. §1391 because Defendant resides here and the challenged discrimination occurred here.

## FACTUAL ALLEGATIONS

9. *Practice* was onstage at Playwrights Horizons starting October 30, 2025, and was scheduled to end on December 7, 2025. Because the show was so popular, it was extended two more weeks to December 19.

2

10. On Thursday, November 6, Playwrights hosted a "BIPOC Night." For this performance of *Practice*, Playwrights "welcome[d] folks who are Black, Indigenous, or People of Color" to use a code to "unlock discount seats."



11. Lynch lives in New Jersey near New York City. He is a composer, producer, and music director. And he frequently attends musicals and plays.

12. Lynch bought two tickets for the November 6 performance of *Practice*—one for himself, and one for his partner.

13. When buying his tickets, Lynch saw the promo code and advertising for BIPOC night. But Lynch is white. He is not—and does not identify as—"Black, Indigenous, or [a Person] of Color." So he could not lawfully or ethically claim the promo code or buy the cheaper tickets.

14. Lynch instead paid full price for his tickets. Lynch's full-price tickets were $90 each. The very same seats would have cost $39 each if Lynch had been BIPOC. In other words, Lynch was overcharged $51 per ticket because of race.

3

15. Everyone else who attended *Practice* on November 6 and did not qualify as black, indigenous, or a person of color was likewise overcharged on account of race. And because *Practice* had only one BIPOC night, patrons who paid full price on other nights were also overcharged based on race.

16. Throughout the run of *Practice*, ordinary full-price tickets ranged from $50 to $100. Because the promo code for BIPOC night knocked more than half off the price, every non-BIPOC patron who paid full ticket price was substantially overcharged.

## CLASS ACTION ALLEGATIONS

17. Plaintiff incorporates all prior allegations.

18. Plaintiff brings this action individually and on behalf of all other persons similarly situated.

19. Plaintiff proposes the following class definition and seeks certification of the following class, subject to amendment based on information obtained through discovery:

> All persons who purchased tickets for Playwrights Horizons' production of *Practice* and paid more than they would have paid if they had attended or used a promo code for BIPOC night.

20. Excluded from the class are Defendant's officers, directors, employees, and agents; any entity in which Defendant has a controlling interest; and affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Also excluded from the class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

21.     Plaintiff reserves the right to amend the class definition or add a class or subclass if further information or discovery indicates that the definitions should be narrowed, expanded, or otherwise modified.

22.     This action satisfies the requirements for a class action under Rule 23, including numerosity, commonality, typicality, adequacy, predominance, and superiority.

23.     **Numerosity**: "In this Circuit, numerosity is presumed when the putative class has at least forty members." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 68-69 (S.D.N.Y. 2018) (citing *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Plaintiffs need not "present a precise calculation," only "some evidence that provides the Court with a reasonable estimate." *Id* at 69.

24.     According to the seating map on the Playwrights Horizons website, the theater for *Practice* has 11 rows, with 18 seats per row—just under 200 seats per show. The show played around 7 times each week for 7 weeks. Because *Practice* usually sold out, a conservative estimate of the total number of tickets sold at full price is 9,000.

25.     Roughly 31% of New York City residents, 53% of New York State residents, and 58% of people in the United States identify as non-Hispanic white. And a recent survey of Broadway shows indicates that "[t]wenty-nine percent of attendees identified themselves as BIPOC."

26.     Even looking at November 6 alone, the number of non-BIPOC patrons who attended that night and did not use the promo code should satisfy numerosity.

5

27. **Commonality**: There are "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), because all class members attended *Practice* and were denied cheaper tickets based on race—in violation of federal law, New York State law, and New York City law.

28. **Typicality**: Lynch's claims are "typical of the claims . . . of the class," Fed. R. Civ. P. 23(a)(3), because he suffered the same harms of racial discrimination and overpricing and brings the same claims for damages under federal, state, and local law.

29. **Adequacy**: Lynch will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

30. Lynch's "interests" are not "antagonistic to the interest of other members of the class." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). He has the same interests as all the class members in vindicating the right to be free from racial discrimination and recuperating the overcharge.

31. Lynch's "attorneys are qualified, experienced and able to conduct the litigation." *Id.* Consovoy McCarthy PLLC has extensive experience litigating class actions and other mass actions and antidiscrimination cases.

32. **Predominance**: Common questions predominate over individual questions here. *See* Fed. R. Civ. P. 23(b)(3). "The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized

6

proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (cleaned up). The factual question is whether Playwrights Horizons discriminated based on non-BIPOC status, and the legal question is whether that discrimination violated the law. These are the main questions in the case, and they are more substantial than any individual question.

33. **Superiority**: A class action is superior to other methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Superiority encompasses four factors: (1) individual control of litigation; (2) prior actions involving the parties; (3) the desirability of the forum; and (4) manageability. *Id.*; *see Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015). Here, "proceeding individually would be prohibitive for class members with small claims." *Newman v. Bayer Corp.*, 348 F.R.D. 567, 585 (S.D.N.Y. 2025). And there is (to counsel's knowledge) no other litigation brought against Playwrights by *Practice* patrons. *See id.* The Southern District of New York is the most convenient forum for a suit against a Manhattan theater company, and there are no other concerns about manageability. *See Sykes*, 780 F.3d at 82; *Newman*, 348 F.R.D. at 585.

## CLAIMS FOR RELIEF
### COUNT I
**Violation of 42 U.S.C. §1981**
**(Racial discrimination in contracting)**

34. Plaintiff repeats and realleges each of the prior allegations.

35. §1981 guarantees "[a]ll persons . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. §1981(a). It prohibits discrimination by "nongovernmental" actors like Playwrights Horizons. *Id.* §1981(c). And it authorizes equitable and legal relief, including damages. *Johnson v. Ry. Express Agency*, 421 U.S. 454, 459-60 (1975).

36. Lynch is protected by §1981, as its "broad terms" bar discrimination "against, or in favor of, any race." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976). Titled "Equal rights under the law," §1981 "guarantee[s] continuous equality between white and nonwhite citizens," *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 208 (2019), by protecting the "equal right of all persons … to make and enforce contracts without respect to race," *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up); *accord Santa Fe Trail*, 427 U.S. at 287 (holding that "[§]1981 is applicable to racial discrimination . . . against white persons"); *Freeport v. Barrella*, 814 F.3d 594, 605 (2d Cir. 2016) (explaining that "§1981 also forbids so-called 'reverse discrimination.'"); *Killin v. Buttercup CT*, 2025 WL 2173993, at *6 (D. Conn. July 31, 2025) ("The Supreme Court and the Second Circuit have made it clear . . . that white litigants are not restricted from pursuing claims under §1981 on the basis of discrimination against their race.").

37. Section 1981 "protects 'would-be contractor[s]' … to the same extent that it protects contracting parties." *AAER v. Fearless Fund*, 103 F.4th 765, 776 (11th Cir. 2024). The statute "offers relief when racial discrimination blocks the creation of a contractual relationship." *Domino's*, 546 U.S. at 476. A contract under §1981 includes "'an

8

agreement to do, or refrain from doing, a particular thing, upon sufficient consideration.'" *Fearless Fund*, 103 F.4th at 775 (quoting 17A Am. Jur. 2d Contracts §1).

38.  Lynch had a contract with Playwrights Horizons. In exchange for Lynch's payment, Playwrights Horizons provided Lynch a seat at the show. It is "well-established" that a "plaintiff's ticket" is an "enforceable contract." *Druyan v. Jagger*, 508 F. Supp. 2d 228, 237 (S.D.N.Y. 2007) (citing *Bickett v. Buffalo Bills, Inc.*, 472 N.Y.S.2d 245, 247 (Sup. Ct. 1983), and *Barnett v. Madison Square Garden Center, Inc.*, 641 N.Y.S.2d 669 (App. Div. 1996)). "[T]he purchase of an event ticket makes a contract that binds the person of the maker" vis-à-vis the "ticket holder." *People v. Watts*, 116 N.E.3d 60, 62 (N.Y. 2018) (cleaned up); *accord Marrone v. Washington Jockey Club of D.C.*, 227 U.S. 633, 636 (1913) (Holmes, J.) ("[T]he purchase of the ticket made a contract.").

39.  In its contract with Lynch, Playwrights Horizons intentionally discriminated based on race. *See Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982). It deliberately chose to offer a discounted ticket price to patrons who were black, indigenous, or people of color. And it purposefully declined to offer this discounted ticket price to patrons who were not black, indigenous, or people of color.

## COUNT II
### New York State Human Rights Law
### (Discrimination in public accommodation)

40.  Plaintiff repeats and realleges each of the prior allegations.

41.  Under the New York State Human Rights Law, a "place of public accommodation, resort or amusement" cannot withhold any "accommodations, advantages,

9

facilities or privileges" based on race or state that it will do so in "any written or printed communication, notice or advertisement." N.Y. Exec. Law §296.2(a). Federal law is similar. *See* 42 U.S.C. §2000a(a) ("All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination . . . on the ground of race.").

42. "The term 'place of public accommodation, resort or amusement' shall include . . . theatres." N.Y. Exec. Law §292(9); *accord* 42 U.S.C. §2000a(b)(3) (same).

43. Under New York law, places of public accommodation must "apply the same standards and terms of . . . sale and services to all persons without regard to race." *State Div. of Hum. Rts. on Complaint of Johnson v. Stern*, 326 N.Y.S.2d 500, 502 (App. Div. 1971). And to state a claim for discrimination under this law, a plaintiff must "only show differential treatment of any degree based on a discriminatory motive." *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014). Charging different prices to different races is facially differential treatment.

44. Playwrights Horizons also violated this law by directly and indirectly advertising—on its webpage and on Instagram—that it would be offering a discriminatory discount based on race. *See supra* ¶10; *see also* castblacktalent, *BIPOC night at @playwrightshorizons*, INSTAGRAM (Oct. 9, 2025), perma.cc/6JEV-3ZT5. Plaintiff Lynch viewed the discriminatory advertisement on the Playwrights website when he bought

10

his tickets. These advertisements had the unlawful purpose of steering non-BIPOC patrons away from the November 6 performance. *See Ragin v. Harry Macklowe Real Est. Co.*, 6 F.3d 898, 904 (2d Cir. 1993) (holding that individuals "confronted by advertisements indicating a preference based on race" suffer a cognizable Article III injury sufficient for damages (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982))).



### COUNT III
### Violation of N.Y. Civ. Rights Law §40-c
### (New York Civil Rights Law)

45. Plaintiff repeats and realleges each of the prior allegations.

46. Under the New York State Civil Rights Law, "[n]o person shall, because of race . . . be subjected to any discrimination in his or her civil rights . . . by any other person or by any firm, corporation or institution." N.Y. Civ. Rights Law §40-c.

47. As a nonprofit that operates a theater, Playwrights Horizons is subject to the Civil Rights Law.

48. "A valid cause of action based on a violation of [the New York State Human Rights Law, Exec. Law §296] exposes the defendant to civil penalties under Section 40–c of the New York Civil Rights Law, recoverable by the person aggrieved." *Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 352 (E.D.N.Y. 2008) (cleaned up). So "facts sufficient to sustain a cause of action under [the New York State Human Rights Law, Exec. Law §296] will support a cause of action under section 40–c of the Civil Rights Law." *Id.* at 353. (cleaned up); *see also Gordon v. PL Long Beach, LLC*, 74 A.D.3d 880, 885 (N.Y. App. Div. 2010) (same).

49. Playwrights Horizons is liable under the Civil Rights Law, §40-c, for the same reason it is liable under the Human Rights Law, Exec. Law §296. It intentionally discriminated by charging a higher ticket price to members of some races than others.

50. "Any person who shall violate [N.Y. Civ. Rights law §40-c] . . . for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars," to be paid to the person "aggrieved thereby." N.Y. Civ. Rights Law §40-d.

51. Playwrights owes this penalty to every patron who was charged a higher ticket rate, including Lynch, because he did not attend or use the promo code for BIPOC night.

### COUNT IV
### Violation of N.Y.C. Admin. Code §8–107(4)
### (New York City Human Rights law)

52. Plaintiff repeats and realleges each of the prior allegations.

12

53. The New York City Human Rights Law makes it unlawful for a "place or provider of public accommodation" to withhold or deny, based on race, "the full and equal enjoyment, on equal terms and conditions." N.Y.C. Admin. Code §8-107(4)(a)(1)(a).

54. By operating a theater, Playwrights manages a place of public accommodation under this ordinance. *See Roberman v. Alamo Drafthouse Cinemas Holdings*, 120 N.Y.S.3d 709, 711 (N.Y. Sup. Ct. 2020).

55. By charging a higher ticket price to patrons who are not BIPOC, Playwrights refused the full and equal enjoyment of its services and facilities on equal terms and conditions.

56. Under this ordinance, it is also unlawful "[d]irectly or indirectly to make any declaration, publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement," that suggests racial discrimination. N.Y.C. Admin. Code §8-107(4)(a)(2)(a)-(b).

57. By advertising directly on its website and indirectly on Instagram that it was holding a "BIPOC Night" with different rates for different races, Playwrights published notice that it would be denying full and equal enjoyment, on equal terms and conditions, to non-BIPOC patrons. *See supra* ¶10, ¶45. And promoting a "BIPOC Night" indicated that the patronage of non-BIPOC patrons was unsolicited, much as a "Caucasian Night" would indicate that the patronage of non-white patrons is unsolicited.

13

## PRAYER FOR RELIEF

58. Plaintiff respectfully asks this Court to certify a class and provide the following relief in favor of Lynch individually and the class he represents:

- A. A declaratory judgment that Playwrights violated federal, state, and local laws prohibiting racial discrimination in contracting and by public accommodations by hosting a BIPOC night and charging customers different prices based on race;

- B. Compensatory damages;

- C. Punitive damages;

- D. Nominal damages;

- E. Reasonable costs and expenses of this action, including attorneys' fees, under 42 U.S.C. §1988 and any other applicable laws; and

- F. All other relief that Plaintiff and the class is entitled to.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

Dated: December 22, 2025

Respectfully submitted,

*/s/ Daniel M. Vitagliano*

Thomas R. McCarthy*
Cameron T. Norris*
Daniel M. Vitagliano†
   SDNY Bar No. 5856703
Tyler A. Dobbs*†
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
dvitagliano@consovoymccarthy.com

*Pro hac vice applications forthcoming*
†*Supervised by principals of the firm admitted to practice in VA*